Dale CRISTEE *v.* STATE of Arkansas

CA CR 87-229                              757 S.W.2d 565

Court of Appeals of Arkansas
Division II
Opinion delivered October 5, 1988

304

*Robert C. Marquette*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

MELVIN MAYFIELD, Judge. Appellant was found guilty by a jury of the crime of attempted burglary. He was sentenced as an habitual offender to a term of 10 years in the Arkansas Department of Correction and fined $5,000.

Joy Butler, who lived directly across the street from Meadors Lumber Company, in Alma, Arkansas, testified that on the night of December 18, 1986, her husband, who had taken the dog out, came back into the house and told her that the lumberyard

burglar alarm was going off. She stepped out on her front porch and saw a man trying to climb over the fence that enclosed the lumberyard. He was on the inside, trying to get out. Mrs. Butler told her son, Jerry Adamson, who had been sitting in the living room with her, what she saw, and he went outside and yelled at the man. The man climbed down off the fence and started running. While Mrs. Butler called the police, her son chased the man across some railroad tracks and through a produce shed to where he was arrested by a police officer. At trial, Adamson was not able to identify the man he saw running down the street but testified that the man climbing over the fence was the man the police arrested.

Officer Harris testified that he arrested the appellant pursuant to a call he had received. He said he observed appellant running south coming onto Fayetteville Street, and he chased appellant in his unit and on foot. He testified that appellant was running down the street with gloves on, holding a crowbar, and that appellant dropped the crowbar and the gloves and came to a complete stop just prior to his arrest. Harris patted appellant down and found a knife in his pants pocket. This was about 8:30 p.m.

Russell White, of the Alma Police Department, was called to assist Officer Harris. He saw a white, 1976 Ford parked just off the alley behind the old bank building in the area of the lumberyard. After appellant was advised of his rights, he told Officer White that he had driven the vehicle to where it was sitting behind the bank building.

Steve Meadors, who worked for Meadors Lumber Company, testified that on the morning of December 19, he discovered a two-foot by two-foot hole in the back wall of the office and that the hole went all the way through the wall. He said the wall consisted of Sheetrock with insulation and insulation board on the outside. He said Sheetrock was on a desk beneath the hole in the wall, and insulation was scattered on the floor beneath the hole. Meadors said they have a burglar alarm that is set off by motion inside the office. He did not know the appellant and had not given him permission to be in the lumberyard on the night of December 18, 1986.

Carlos Brown testified that the appellant had worked for him

on December 18, 1986. Appellant got off work about 6:30 p.m. His job was helping to measure, cut, and hang Sheetrock.

On appeal, appellant argues the trial court erred in failing to grant his motion for a directed verdict made at the conclusion of the state's testimony and renewed at the close of all the testimony. This motion was a challenge to the sufficiency of the evidence. *Glick* v. *State*, 275 Ark. 34, 627 S.W.2d 14 (1982). In resolving the question of the sufficiency of the evidence in a criminal case, the appellate court views the evidence in the light most favorable to the appellee and affirms the judgment if there is substantial evidence to support the finding of the trier of fact. *Lane* v. *State*, 288 Ark. 175, 702 S.W.2d 806 (1986). Substantial evidence is that which is of sufficient force and character that it will with reasonable and material certainty and precision compel a conclusion one way or the other, without resorting to speculation or conjecture. *Jones* v. *State*, 11 Ark. App. 129, 668 S.W.2d 30 (1984). The fact that evidence is circumstantial does not render it insubstantial. *Small* v. *State*, 5 Ark. App. 87, 632 S.W.2d 448 (1982). When circumstantial evidence alone is relied upon, it must indicate the accused's guilt and exclude every other reasonable hypothesis; whether circumstantial evidence excludes every other reasonable hypothesis is usually a question for the jury. *Murry* v. *State*, 276 Ark. 372, 635 S.W.2d 237 (1982). It is only when circumstantial evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law. *Deviney* v. *State*, 14 Ark. App. 70, 685 S.W.2d 179 (1985). Also, the action of an accused in fleeing from the scene of a crime is a circumstance that may be considered with other evidence in determining probable guilt. *Murphy* v. *State*, 255 Ark. 90, 498 S.W.2d 884 (1973).

Arkansas Statutes Annotated § 41-701 (Repl. 1977) [Ark. Code Ann. § 5-3-201 (1987)] provides:

(1) A person attempts to commit an offense if he:

. . . .

(b) purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be.

Section 41-2002 (Repl. 1977) [Ark. Code Ann. § 5-39-201 (1987)] provides:

> (1) A person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment.

Although the appellant was convicted of attempted burglary, it was nevertheless necessary to prove that he attempted to enter an occupiable structure with the purpose of committing therein an offense punishable by imprisonment. A building where people assembled for social activities, religious sessions, and classroom meetings has been held to be an occupiable structure regardless of whether anyone was occupying it at the time. *Barksdale v. State*, 262 Ark. 271, 555 S.W.2d 948 (1977). *See also Grays v. State*, 264 Ark. 564, 572 S.W.2d 847 (1978) (defendant went into a seed company building when it was not open for regular business). The real question in the present case is whether the evidence is sufficient to support a finding that the appellant entered the lumber company's office building with the intent to commit an offense punishable by imprisonment.

In *Norton v. State*, 271 Ark. 451, 609 S.W.2d 1 (1980), the court said that the United States Supreme Court's decisions in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), and *Patterson v. New York*, 432 U.S. 197 (1977), held that due process requires the prosecution to prove beyond a reasonable doubt every element of the crime charged. The *Norton* opinion also stated that specific criminal intent and illegal entry are both elements of the crime of burglary and that existence of the intent cannot be presumed from a mere showing of the illegal entry. A conviction for burglary was reversed in *Norton* because, the court said, "[a]t most, the evidence revealed that appellant was standing inside the doorway of an office building which he had illegally entered and from which nothing was taken, speaking to his friends passing by." *See also Wortham v. State*, 5 Ark. App. 161, 634 S.W.2d 141 (1982) (conviction for burglary reversed where the defendant was discovered standing in a doorway in a house, but there was no proof that he had attempted to harm anyone, take anything, or commit any other crime).

Recognizing the proof requirements set out in *Norton*, we

believe the appellant's conviction must be affirmed in the present case. First, we have evidence from which the jury could find that the burglar alarm was activated when the Sheetrock and insulation fell into the office from the hole made through the office wall. The jury could find that the appellant then ran from the building, climbed the fence, and tried to run away from Jerry Adamson and Officer Harris. In *Grays* v. *State, supra*, a man who entered a business building in the night, when the business was not open, ran from the building when police officers inside the building shined a light on him and told him to "freeze." The appellate court specifically cited *Patterson* v. *New York, supra*, and its requirement that the state must prove every material element of the offense charged and held that the trial court did not err in refusing to instruct the jury on the lesser included offense of criminal trespass because "[e]ven when we consider the facts in the light most favorable to appellant we can find no rational basis for a verdict acquitting appellant of the offense of Burglary ...." The *Norton* case distinguished *Grays* on the basis that the defendant in *Grays* ran when he was discovered in the building by the police officers and the defendant in *Norton* did not. The opinion states: "We have consistently suggested that the flight of an accused to avoid arrest is evidence of his felonious intent." *See* 271 Ark. at 454. So, in the present case we have the evidence that this appellant ran from the building and from Officer Harris for some distance before he stopped.

In the second place, in *Grays* the appellate court could "find no rational basis" for the defendant in that case to enter the building during the night that would acquit him of burglary. This reasoning applies in the present case. The appellant here did not testify but we cannot think of any rational reason to explain his conduct except an attempt to commit burglary. As the court in *Grays* said, "the fundamental theory, in absence of evidence of other intent or explanation for breaking or entering an occupiable structure at night, is that the usual object or purpose of burglarizing an occupiable structure at night is theft." This point marks a difference between this case and *Wortham* v. *State, supra*, where the opinion states that the defendant in that case had, on a prior occasion, talked to the girls who lived in the house which he entered without seeking permission. The opinion says that while that appellant may have intended to commit some

crime when he entered the open door, "it is equally reasonable" to believe that he wanted only to talk to the girls again. *See also Washington v. State*, 268 Ark. 1117, 599 S.W.2d 408 (Ark. App. 1980), where the court in reversing a burglary conviction said, "an innocent purpose would not be inconsistent with the circumstances shown." 268 Ark. at 1121.

The existence of criminal intent or purpose is "a question of fact for the jury when the evidence shows facts from which it may reasonably be inferred." *Grays*, 264 Ark. at 570 (quoting from *Cassady* v. *State*, 247 Ark. 690, 447 S.W.2d 144 (1969)). We think there is substantial evidence to support the jury's verdict in the present case.

Affirmed.

JENNINGS and COULSON, JJ., agree.