Bob COTNAM, Sr. *v.* STATE of Arkansas

CA CR 90-279                                          819 S.W.2d 291

Court of Appeals of Arkansas
Division I
Opinion delivered November 13, 1991
[Rehearing denied December 18, 1991.]

*Hurst Law Offices*, by: *Q. Byrum Hurst, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. Appellant, Bob Cotnam, Sr., was convicted in a bench trial of defrauding a creditor, a violation of Ark. Code Ann. § 5-37-211 (1987). The trial court suspended appellant's three-year sentence, and ordered him to make restitution to the victim. For reversal, appellant contends that the trial court erred in denying his motions for a directed verdict, and that the trial court lacked subject matter jurisdiction to include restitution as a condition of his suspended sentence. We find no merit in either contention, and affirm.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *McIntosh* v. *State*, 296 Ark. 167, 753 S.W.2d 273 (1988). On appeal in criminal cases, whether tried by judge or jury, we review the evidence in the light most favorable to

the state, and affirm if there is any substantial evidence to support the trial court's judgment. *Woodberry* v. *State*, 35 Ark. App. 129, 811 S.W.2d 339 (1991). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty and precision, compel a conclusion one way or the other without resorting to speculation or conjecture. *Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989).

A person commits the offense of defrauding a judgment creditor if, with the purpose to defraud and with knowledge that civil proceedings have been or are about to be instituted, he conceals, assigns, conveys, or otherwise disposes of property to prevent that property from being made liable for the payment of a judgment. Ark. Code. Ann. § 5-37-211(a)(2) (1987). A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result. Ark. Code Ann § 5-2-202(1) (1987).

At trial, there was evidence introduced that on March 10, 1989, a judgment was entered against appellant in favor of Caneta R. Bledsoe in the amount of $5,800, plus costs, interest and attorney's fees, for which a writ of execution was issued on the twenty first of April. Deputy Leroy McFarland of the Garland County Sheriff's Office testified that he and Deputy Debbie Wadlow attempted to serve appellant with the writ at his residence on May 3, 1989. McFarland related that he was familiar with appellant as two of appellant's vehicles were levied upon pursuant to a previous writ of execution the past year. McFarland said that on May 3rd he spoke with appellant's wife, Yvonne Cotnam, telling her that he needed to speak with appellant in reference to the civil lawsuit, and he testified that Ms. Cotnam said that she would have appellant telephone him. McFarland stated that appellant did call him later that afternoon and that in this conversation he told appellant about the writ of execution in the total amount of $6,513.94. McFarland related that appellant indicated that he was aware of the judgment and told him that the matter would be taken care of promptly.

Deputy McFarland further testified that on May 10, 1989, he and Deputy Wadlow again attempted to serve the writ, and made contact with appellant's son, Bob Cotnam, Jr., at the home of the appellant. McFarland advised Bob that appellant needed to

resolve the matter, and also made known the intent to levy on a 1979 Ford pickup truck owned by appellant, which was listed on the writ for execution. He testified that the truck was not at the residence when these attempts were made to serve the writ. After this visit, McFarland said that he requested Deputy Wadlow to determine what property of appellant would be available for execution since he felt appellant was not resolving the matter. By May 17th, when a third attempt to serve the writ was made, it was discovered that on May 10th, appellant had transferred title to the Ford truck to his wife, Yvonne.

Deputy Debbie Wadlow also testified, giving essentially the same testimony as that of Deputy McFarland. Yvonne Cotnam was also called as a witness to testify on behalf of the prosecution. She recalled Deputy McFarland's visit to her home on May 3rd, but denied that she was informed of its purpose or that she was asked to have appellant contact Deputy McFarland. She testified that she had knowledge of the judgment, but denied that the truck was conveyed to her with the purpose of defrauding the creditor, Ms. Bledsoe. She testified that she and appellant were having financial difficulties and that title was transferred to her so that she could place the truck on her insurance, which would yield a savings of $50 every six months in insurance premiums. She also testified that on March 27, 1989, she and appellant offered Ms. Bledsoe a deed to a piece of property worth approximately $6,500 in order to satisfy the judgment. As evidence of this offer, a cover letter, setting forth the offer, dated March 27, 1989, from appellant's to Ms. Bledsoe's attorney was introduced, along with a copy of the unrecorded deed.

George Callahan, the attorney who represented Ms. Bledsoe in the civil action, testified that he did not specifically recall this particular offer, explaining that several such offers were made during the course of the civil litigation. He stated that he had no recollection of discussing this offer with his client.

Ms. Caneta R. Bledsoe testified that the civil lawsuit involved a lot in Hot Springs, Arkansas, in the Diamond Head Subdivision. She said that she had turned the lot over to appellant to sell as he had represented that he had a buyer for it. She related that appellant failed to sell the lot, but that appellant said that he would buy it instead. Ms. Bledsoe testified that the check

appellant wrote for the lot bounced, and that she sued appellant to recover the purchase price. Ms. Bledsoe recalled the offer of a deed to another lot in the subdivision made in March, but testified that she did not want that lot, stating that the lot involved in the lawsuit was a waterfront lot, and that if she took a lot back in the subdivision, she wanted the waterfront lot back.

Appellant testified that he was aware of the judgment entered against him in March 1989. He testified that he and his wife signed a deed over to Ms. Bledsoe to satisfy the judgment, and that the lot reflected on the deed, eight feet of which was on the waterfront, was valued at $6,500. He stated that the truck had an appraised value of $750, and that it was conveyed to his wife to save on insurance. He denied that the transfer was made to prevent it from being levied upon. Appellant testified that his wife told him about Deputy McFarland's visit to his home on May 3rd, but denied that he was given a message to call. He also testified that he did not telephone or speak with Deputy McFarland on that date. When asked about the status of the civil judgment, appellant replied that the judgment had subsequently been discharged in bankruptcy. On cross-examination, appellant testified that he had property levied upon before. He said that he had no knowledge that Deputy McFarland had been to his home and had spoken with his son on the tenth of May. He testified that it was a coincidence that the truck was transferred to his wife on that date.

On appeal, appellant argues that there was insufficient evidence introduced to demonstrate that he possessed the requisite purposeful intent to defraud the creditor in conveying the truck to his wife. Appellant contends the lack of such intent was shown by evidence that he tendered a piece of property of equivalent value to Ms. Bledsoe to satisfy the judgment; that other valuable property existed to satisfy the judgment; and that the evidence shows that the transfer was made to save on insurance. He further argues that the state's evidence was only circumstantial, and is insufficient to sustain a finding of guilt. We disagree.

Purpose or intent is a state of mind that is not ordinarily capable of proof by direct evidence but may be inferred from the circumstances. *Alford* v. *State*, 34 Ark. App. 113, 806

S.W.2d 29 (1991). It is only when circumstantial evidence leaves the factfinder solely to speculation and conjecture that it is insufficient as a mater of law. *Id.* The drawing of reasonable inferences from the testimony is for the trial judge as the factfinder. *Faulkner* v. *State*, 16 Ark. App. 128, 697 S.W.2d 537 (1985). Notwithstanding appellant's arguments, we think that there is substantial evidence in the record from which the trial court could infer that appellant conveyed the truck to his wife to prevent it from being made liable for the payment of the judgment. We note that appellant also presents the argument that the evidence of intent was insufficient because state law gave him, as a judgment debtor, the right to select property with which to satisfy an execution. We do not consider this circumstance because there is no indication in the record whatsoever that such an election was made.

Appellant next argues that, because the underlying judgment had been discharged in bankruptcy, it was error for the trial court to have ordered him to make restitution to Ms. Bledsoe for the full amount of the judgment. Appellant acknowledges that he interposed no objection to this portion of this sentence and is thus raising this issue for the first time on appeal. He argues, however, that the trial court lacked subject matter jurisdiction to sentence him to pay restitution "because such a restitutionary sentence is void under the Supremacy Clause of the United States Constitution as being in conflict with 11 U.S.C. § 524(a)(2), which prohibits actions to collect a discharged debt." Citing *Palmer* v. *State*, 31 Ark. App. 97, 788 S.W.2d 440 (1986), appellant also contends that the order of restitution constitutes an illegal sentence, and that this court may consider this issue despite the absence of an appropriate objection in the trial court.

11 U.S.C. § 524(a)(2), which is relied upon by appellant, provides as follows:

> A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

The cases applying this statute referred to us by appellant, as decided by various bankruptcy courts, speak in terms of *enjoining*

state criminal courts from ordering the payment of restitution on discharged debts. While it appears that § 524(a)(2) authorizes a bankruptcy court to enjoin state criminal prosecutions, none of these decisions indicate that the state trial courts were deprived of jurisdiction to prosecute the debtor for a related criminal offense simply by virtue of a discharge in bankruptcy. For instance, in the case of *In re Brown*, 51 B.R. 51 (Bkrtcy. E.D. Ark. 1985), the bankruptcy court specifically declined to enjoin the prosecution of the debtor for a hot check violation under Arkansas law, even though the underlying debt had been discharged.

In *Banning* v. *State*, 22 Ark. App. 144, 737 S.W.2d 167 (1987), we said:

> The rule of almost universal application is that there is a distinction between want of jurisdiction to adjudicate a matter and a determination of whether the jurisdiction should be exercised. Jurisdiction of the subject matter is power lawfully conferred on a court to adjudge matters concerning the general question in controversy. It is power to act on the general cause of action alleged and to determine whether the particular facts call for the exercise of that power. Subject matter jurisdiction does not depend on a correct exercise of that power in any particular case. If the court errs in its decision or proceeds irregularly within its assigned jurisdiction, the remedy is by appeal or direct action in the erring court. If it was within the court's jurisdiction to act upon the subject matter, that action is binding until reversed or set aside.

*Id.* at 149, 737 S.W.2d at 170 (citations omitted). There, we also recognized that the circuit courts of Arkansas have subject matter jurisdiction to hear and determine cases involving violations of criminal statutes. We conclude that appellant's claim of error is one that does not involve subject mater jurisdiction, which precludes him from raising this issue for the first time on appeal. While appellant may have been entitled to an injunction as issued by a bankruptcy court, appellant took no affirmative action to obtain relief nor did he present this argument to the trial court. It is not for this court to redress this matter in the first instance.

As appellant correctly points out, we have held, however, that when a court has imposed an illegal sentence, we

will review it regardless of whether an objection was raised below. *Jones* v. *State*, 27 Ark. App. 24, 765 S.W.2d 15 (1987). An illegal sentence is a sentence that is illegal on its face. *Lovelace* v. *State*, 301 Ark. 519, 785 S.W.2d 212 (1990). The power to sentence appellant to make restitution is clearly prescribed by law, and thus the sentence was not illegal on its face. Ark. Code. Ann. § 5-4-104(d)(4) (Supp. 1991).

We hold that this issue was not properly preserved for appellate review because appellant failed to object to the sentence at the time it was entered. *See Dennis* v. *State*, 26 Ark. App. 294, 764 S.W.2d 466 (1989).

Affirmed.

COOPER and JENNINGS, JJ., agree.